**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CCCOK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. CIV-07-629-M |
| | ) | |
| SOUTHWESTERN BELL | ) | |
| TELEPHONE, L.P. d/b/a AT&T OF | ) | |
| OKLAHOMA, f/k/a SWBT; THE | ) | |
| CORPORATION COMMISSION OF | ) | |
| OKLAHOMA; JEFF CLOUD, IN HIS | ) | |
| OFFICIAL CAPACITY AS CHAIRMAN | ) | |
| OF THE CORPORATION COMMISSION | ) | |
| OF OKLAHOMA; DENISE A. BODE, | ) | |
| IN HER OFFICIAL CAPACITY AS | ) | |
| FORMER COMMISSIONER OF THE | ) | |
| CORPORATION COMMISSION OF | ) | |
| OKLAHOMA and BOB ANTHONY, | ) | |
| IN HIS OFFICIAL CAPACITY AS | ) | |
| COMMISSIONER OF THE | ) | |
| CORPORATION COMMISSION OF | ) | |
| OKLAHOMA, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff CCCOK, Inc.'s ("CCCOK") appeal of determination made by the Oklahoma Corporation Commission ("Commission") rendered pursuant to the Federal Telecommunications Act of 1996. Defendants Bob Anthony, Jeff Cloud and Denise A. Bode ("Commissioners") and Southwestern Bell Telephone Company d/b/a AT&T Oklahoma ("SWBT") filed separate Responses. CCCOK filed a Reply, and the matter is now at issue.

# I.    Background

CCCOK filed this appeal challenging the May 2, 2000, Order of the Commission holding that AT&T Oklahoma does not owe CCCOK any reciprocal compensation under the controlling Interconnection Agreement ("ICA").   On July 9, 1999, the Commission approved an ICA between CCCOK and Southwestern Bell Telephone, L.P. d/b/a AT&T OK ("SWBT").   Pursuant to the ICA, CCCOK and SWBT compensated each other for minutes of use for calls terminated by their subscriber at the rate of $0.012 per minute of use.   That is, if one of CCCOK's customers called a customer of SWBT, then CCCOK would owe SWBT compensation for the minutes of use of the call.   CCCOK and SWBT recorded the originating minutes of use for all calls between SWBT and CCCOK customers.    In accordance with the billing terms and conditions of the ICA, CCCOK submitted its monthly billing statement for the usage months of February, March, April, May and June 2001.   SWBT disputed CCCOK's claim for compensation claiming the vast majority of recorded originating minutes billed by CCCOK constituted "artificial traffic" for which no compensation was due under the parties' ICA.   SWBT paid CCCOK for the usage which it deemed not artificial traffic.

On January 3, 2005, CCCOK filed its Complaint against SWBT in Oklahoma Corporation Commission Cause No. PUD 200500002 seeking an order finding that SWBT breached its obligations under the ICA, and directing SWBT to pay CCCOK for all local call termination compensation amounts invoiced and demanded by CCCOK plus interest and costs. On January 24, 2005, AT&T filed its response denying any breach of the ICA.   CCCOK filed its reply.   On September 11, 2006, a hearing was held before the OCC Arbitrator Maribeth Snapp for the purpose of hearing the merits of the case and reporting findings and recommendation to the OCC. The

arbitrator found the disputed service traffic compensable and recommended the OCC issue an order directing SWBT to pay CCCOK the sum of $2,280,088.78. CCCOK and SWBT both appealed the report and recommendation of the Arbitrator. On November 7, 2006, both parties filed their respective response. On December 13, 2006, the OCC held a hearing on the matter. The OCC determined after a thorough review of the record that the disputed traffic did not qualify for reciprocal compensation under the clear and unambiguous provisions of the ICA. On May 2, 2007, Chairman Jeff Cloud, Vice Chairman Denise A. Bode and Commissioner Bob Anthony of the Oklahoma Corporation Commission therefore reversed the Arbitrator's decision finding:

> To qualify for reciprocal compensation under the ICA, traffic must be originated by AT&T Oklahoma's end user, must consist of information of the user's choosing, and must be terminated at the direction of AT&T Oklahoma's end users at destinations of the end user's choice. MegaPort traffic does not qualify under any of these criteria. AT&T Oklahoma does not owe Connect any reciprocal Compensation under the ICA.

CCCOK is now seeking review of the decision of the OCC.

II.    Standard of Review

Because the determination of the OCC was based on a state law determination of the scope of the ICA, the standard of review for the Court is whether that determination was arbitrary and capricious. *Southwestern Bell Tel. Co. v. Brooks Fiber Commc'ns of Okla., Inc.*, 235 F.3d 493, 498 (10th Cir. 2000). The District Court of Colorado has explained the arbitrary and capricious standard applied in this setting:

> The arbitrary and capricious standard that will be applied to all issues other than "questions of law" as defined by *Amisub [(PSL), Inc. v. State of Colorado Dept. Of Social Services*, 879 F.2d 789 (10th Cir. 1989)] is "highly deferential; the agency's action is presumed valid if a reasonable basis exists for its decision." *Amisub*, 879 F.2d at 800. However, "the presumption of validity 'is not to shield [the agency's] action from a thorough, probing, in-depth review.'" *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). Thus, the court must

3

determine whether the agency action "' was based on a consideration of the relevant factors' and examine 'whether there has been a clear error of judgment.'" *Friends of the Bow v. Thompson*, 124 F.3d 1210, 1215 (10th Cir. 1997) (quoting *Overton Park*, 401 U.S. at 416); *see also Amisub*, 879 F.2d at 800. "Generally, an agency decision will be considered arbitrary and capricious if the agency had relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Friends of the Bow*, 124 F.3d at 1215 (*quotation omitted*). "The Court is not empowered to substitute its judgment for that of the agency." *Id.*

*US West Commc'ns, Inc. v. Hix* 986 F.Supp. 13, 18 (D. Colo. 1997). The Tenth Circuit has refined some portions of *Hix*, but has not rejected or altered its explanation of the arbitrary and capricious standard. *See Southwestern Bell Tel. Co. v. Appl,* 309 F.3d 713 (10th Cir. 2002). Thus, the Court will apply this standard in evaluating the actions of defendants here.

III.    Discussion

CCCOK offers several arguments in support of its position that the determination of the OCC was arbitrary and capricious: 1) OCC ignored substantial and undisputed record evidence proving that the disputed traffic was compensable under the parties' ICA; 2) OCC failed to acknowledge, much less follow, the unambiguous terms of the parties' ICA; and 3) OCC ignored the decision of the 10th Circuit Court of Appeals in *Southwestern Bell Telephone Co. v. Brooks Fiber Communications of Oklahoma, Inc.,* 235 F.3d 493 (10th Cir. 2000).

In support of its first argument, CCCOK asserts the OCC failed to consider undisputed evidence proving that the disputed ISP-bound traffic, also known as MegaPort traffic, was originated by an SWBT end user and terminated to a CCCOK end user within the same local exchange area and, thus, compensable. In support of this argument CCCOK relies on the testimony of Ted L. Snider Jr., chief executive office of CCCOK. In support of his claim that SWBT intentionally

breached its contractual obligation to pay CCCOK, Mr. Snider agrees that pursuant to the ICA, reciprocal compensation was to be paid for telecommunications between the parties' end users within a single local exchange area. However, during his recorded testimony Mr. Snider went on to explain that the disputed traffic was actually recorded by end office switches installed by CCCOK's subsidiary ZipRamp, Inc. (also referred to as "ISP-bound MegaPort"). Mr. Snider explained that the MegaPort service was always on providing access twenty-four hours a day, seven days a week. Mr. Snider also explained that twenty-four hours a day multiple telephone calls were made by this mechanical switch utilizing this always on access and reported to SWBT for compensation. In response to Mr. Sniders' prefiled testimony, SWBT through testimony of several witnesses: Michael Phillips, Area Manager for AT&T's Network Services, J. Scott McPhee, Associate Director-Witness Support for Pacific Bell Telephone Company, Lynn D. Layman, AT&T Area Manager-Carrier Compensation, Jason E. Constable, Area Manager-Switching/Emerging Technologies and Edward Cuellar, AT&T Area Manager-Network Engineering for AT&T Internet Services, submitted evidence that CCCOK's claims were based on artificial traffic originated by the mechanical ISP-bound Mega Port switches. Specifically, SWBT's witnesses testified that CCCOK's claims are based on traffic generated by programming its own computerized network equipment to continuously dial and redial its own numbers and thus does not qualify for reciprocal compensation. SWBT also contends CCCOK designed its MegaPort service specifically to generate minutes of use as a purported basis to charge and collect reciprocal compensation. There is no dispute as to how the MegaPort service operated. MegaPort customers were SWBT customers,

(generally churches, schools and non profits), that had subscribed to the MegaPort service.[1] CCCOK programed each MegaPort device at the customers' premises to auto-dial. Once the mechanical device was installed it was programed to establish connections only to CCCOK's ZipRamp Internet service facilities. Voice generated calls were not available on MegaPort. SWBT's witnesses each testified at length as to the unprincipled and deceitful scheme used by CCCOK to generate artificial traffic for the sole purpose of asserting claims for reciprocal compensation. SWBT contends CCCOK purposely programmed its equipment to generate artificial traffic and sent that artificial traffic on to SWBT disguised as traffic generated by end users to receive payment. Upon its review, the OCC found no evidence that any SWBT customer ever actually used the CCCOK's ZipRamp internet service.

Contrary to CCCOK's argument, the Court finds the actions of the OCC are properly supported by the evidence presented. The ICA specifically requires traffic to be originated by one party's end user, traded between the parties and terminated to the other party's end users. Throughout the ICA it is noted that calls originated by end users and terminated to end users as a requirement for compensation. It is clear from the evidence presented that the disputed telecommunication traffic was originated by a mechanical device and was not terminated by a party's end user. It clear from the evidence that the Mega Port traffic was generated by a mechanical device owned by CCCOK's affiliate, installed at the SWBT's end user's premises and programmed to operate as an auto-dialer. Accordingly, it was not arbitrary or capricious for the

---

[1]CCCOK contends that by a separate agreement these particular SWBT customers granted ZipRamp Inc. permission to use automatic switches to continuously place calls from their premises twenty four hours a day, seven days a week to generate reciprocal compensation for CCCOK.

OCC to find the disputed traffic did not qualify for reciprocal compensation under the ICA.

Next, CCCOK argues the OCC failed to acknowledge, much less follow, the unambiguous terms of the parties ICA. There is no dispute as to the terms of the ICA. Additionally, the parties do not dispute that Oklahoma contract law governs the interpretation of the ICA in this case. Under Oklahoma contract law if the terms of the contract are unambiguous, the plain language of the contract controls. *See Bayouth v. Howard*, 1948 OK 34, 190 P.2d 793.

As previously noted, to qualify for reciprocal compensation under the ICA, traffic must be originated, controlled and terminated by CCCOK or SWBT end users. It is also undisputed that instead of utilizing either party's end users to generate traffic, CCCOK placed computerized equipment at the premises of SWBT's end users in order to automatically generate artificial traffic destined to CCCOK's ZipRamp service facilities. Thus, the OCC's interpretation of the ICA finding the disputed traffic was not compensable is not arbitrary or capricious.

CCCOK's final argument asserts the OCC ignored the decision of the 10th Circuit Court of Appeals in *Southwestern Bell Telephone Co. v. Brooks Fiber Communications of Oklahoma, Inc.,* 235 F.3d 493 (10th Cir. 2000). Specifically, CCCOK argues the terms of the SWBT/Brooks Fiber ICA are identical to the terms of the ICA at issue in this case and thus SWBT is required to pay reciprocal compensation for its termination of the MegaPort service in this case. SWBT contends the issue before the Court is not whether the OCC properly applied Tenth Circuit precedent, but whether considering the facts in this case, refusing to make specific reference to the *Brooks* case was arbitrary and capricious.

In reaching its decision the OCC makes a clear recitation of the facts relevant to the issue in this case, whether the MegaPort traffic qualifies for reciprocal compensation under the ICA. The

OCC found that the traffic at issue was not originated by a party's end user but rather was generated by equipment owned by CCCOK, installed at the SWBT's end user's premises and programmed to operate as an auto-dialer. Through its review the OCC found no evidence in the record to establish that any end user actually made use of MegaPort service, or originated any call on CCCOK's network. Therefore, because the OCC's decision was based on the specific facts in this case as applied to the ICA, no arbitrary and capricious conduct is shown by not citing to distinguishable Tenth Circuit precedent.

IV.    Conclusion

As set forth more fully herein, the Court finds no evidence of arbitrary and capricious actions in the proceedings challenged by CCCOK, Inc. Accordingly, the Oklahoma Corporation Commission Order No. 538697 entered May 2, 2007, is affirmed in all respects.

**IT IS SO ORDERED this 21st day of December, 2010.**


VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE